# Commonwealth *v.* Chiemilewski, Appellant.

*Criminal law—Procedure—Writ of venire—Clerical errors—Juries—Drawing of jurors—Jury commissioners—Act of April 10, 1867, Sec. 3, P. L. 62—Act of March 18, 1874, P. L. 46.*

1. A conviction of murder of the first degree and sentence of death will not be reversed for clerical errors in the writ of venire in no way affecting the merits of the case.

2. Where a writ of venire had been executed, but due to the use of an old blank in which the name of a former judge of the court was printed, was improperly attested, although correct in other respects, it was not error for the court to refuse to quash the array of jurors and to allow the writ to be amended after its execution. The venire is only a precept to the sheriff to summon the jurors drawn, and having answered its purpose, cannot be assailed for any mere irregularity not affecting substantial justice.

3. The opening of a jury wheel at the proper time and place in the presence of the sheriff and but one commissioner is not ground for quashing the array of jurors. The provision of the Act of April 10, 1867, P. L. 62, Sec. 3, that the jury commissioners and sheriff, "or any two of them," shall draw panels of jurors from the proper wheel, is not changed by the Act of March 18, 1874, P. L. 46, which provides that a new panel may be chosen "if by accident, mistake or neglect of the sheriff or jury commissioners of any county, or either of them, the wheel aforesaid has been opened, unlocked or unsealed, except in the presence of such sheriff and jury commissioners, and a challenge to the array has been sustained for any of the last mentioned causes." The purpose of the latter act is to provide a method of supplying jurors when a previous array has been quashed.

*Homicide—Evidence—Collateral crimes—Motive—Dying declarations—Charge to jury.*

4. The rule that evidence of collateral crimes cannot be introduced on the trial of a homicide charge, is subject to an exception

where the circumstances surrounding the collateral crime are essential to the proof or explanation of the crime charged; and evidence to show the motive prompting the commission of the crime charged is relevant notwithstanding it shows the commission by the accused of another crime of dissimilar character.

5. On a trial for murder where the dying declarations of the deceased are properly admitted in evidence, it is not error for the court to charge the jury that "the theory of the law is, that a person is apt to tell the truth in such a solemn moment, but the fact that a man is dying when he makes a declaration of any kind must be considered by the jury in the light of all the conditions and circumstances surrounding the dying man."

6. On a trial for murder it appeared that the defendant and certain others had together committed a series of robberies; that on such occasions defendant was armed with a revolver; and that after one of these robberies defendant had said to one of his associates, that if a policeman should come he would run or shoot. Subsequently the deceased and two other officers came to defendant's house with warrants for the arrest of two of defendant's associates on the charge of robbery. The defendant, who was present at the arrest, went upstairs to get the coats of the prisoners, and while there remarked to his room-mate that the policemen had come and "they are going to take me and I think I had better run away." Defendant then took a revolver, let himself down into the yard and ran away. A few minutes later shots were heard and deceased, who was on guard outside, was found suffering from bullet wounds, one of which caused his death. The deceased said he had been shot by a man in a dark suit and wearing a derby hat, and who ran out towards the front of the house and went down the street. A witness who heard the shots saw a man running away who wore such clothes and was carrying a revolver. The day after the shooting the defendant gave a revolver to his cousin. The court refused to exclude the evidence of the robberies and of defendant's participation therein. *Held,* that a verdict of guilty of murder of the first degree should be sustained.

Argued Oct. 6, 1913. Appeal, No. 221, Jan. T., 1913, by defendant, from judgment of O. & T. Lackawanna Co., April Sessions, 1913, No. 11, on verdict of guilty of murder of the first degree, in case of Commonwealth of Pennsylvania v. John Chiemilewski. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Indictment for murder. Before EDWARDS, P. J.

From the record it appeared that the deceased Mc-Andrew, who was a patrolman, had gone to the house of defendant on the night of the killing in company with two other officers, for the purpose of arresting two companions of defendant for robberies in which defendant had participated.

The court charged the jury, inter alia, as follows:

"I need not comment on the dying declaration of the deceased. You heard the statement and you are in duty bound to give it the weight it deserves. The theory of the law is that a person is apt to tell the truth in such a solemn moment, but the fact that a man is dying when he makes a declaration of any kind must be considered by the jury in the light of all the conditions and all the circumstances surrounding the dying man." (31)

Other facts appear by the opinion of the Supreme Court.

Verdict of guilty of murder of the first degree upon which sentence of death was passed. Defendant appealed.

*Errors assigned,* among others, were the first, complaining of the refusal of the court to quash the array of jurors; the second and tenth, referred to in the opinion of the Supreme Court, and (31) above instruction.

*Clarence Balentine,* with him *P. C. Foley,* for appellant.—The writ of venire was fatally defective: Com. v. Smith, 2 S. & R. 300; Com. v. Chauncey, 2 Ashmead 90; Dyott v. Com., 5 Whart. 67. The opening, unlocking and unsealing of the jury wheel in the absence of one jury commissioner was illegal: Brown v. Com., 73 Pa. 321; Com. v. Baranowski, 5 Pa. C. C. R. 642; Kittanning Ins. Co. v. Adams, 110 Pa. 553; Com. v. Sloan, 15 Pa. D. R. 865; Curley v. Com., 84 Pa. 151; Com. v. Shew, 8 Pa. D. R. 484. The evidence of the commission of other crimes was inadmissible: Shaffner v. Com., 72 Pa. 60;

People v. Shea, 147 N. Y. 78; Com. v. Jackson, 132 Mass. 16; Hope v. People, 83 N. Y. 418; Com. v. Grether, 204 Pa. 203; Com. v. Major, 198 Pa. 290.

The charge to the jury was erroneous: Com. v. Curcio, 216 Pa. 380; Com. v. Colandro, 231 Pa. 343; Com. v. Silcox, 161 Pa. 484; Com. v. Cooseboom, 155 Mass. 298; People v. Clarke, 105 Mich. 169.

*Davis J. Reedy,* District Attorney, with him *Thomas A. Donahoe,* Assistant District Attorney, for appellee.— The defect in the writ of venire was amendable and did not affect the merits of the case: Bailey v. Musgrave, 2 S. & R. 219; Com. v. Smith, 2 S. & R. 300; Benjamin v. Armstrong, 2 S. & R. 392; Com. v. Chauncey, 2 Ashmead 90; Dyott v. Com., 5 Wharton 67; Rolland v. Com., 82 Pa. 306; Com. v. Miller, 4 Phila. 210; Com. v. Van Horn, 188 Pa. 143; Com. v. Rusic, 229 Pa. 587; Johnson v. Com., 115 Pa. 369; Maloney v. Simpson, 226 Pa. 479; Baker v. Smith, 4 Yeates 185; Berthon v. Keeley, 4 Yeates 205; Peddle v. Hollinshead, 9 S. & R. 277; Brown v. Com., 73 Pa. 321; Com. v. Manfredi, 162 Pa. 144; Curley v. Com., 84 Pa. 151.

The evidence of the commission of the other crimes was properly admitted: Com. v. Colandro, 231 Pa. 343; Com. v. Birriolo, 197 Pa. 371; Goersen v. Com., 106 Pa. 477; Goersen v. Com., 99 Pa. 388; McManus v. Com., 91 Pa. 57; Hester v. Com., 85 Pa. 139; Carroll v. Com., 84 Pa. 107; Campbell v. Com., 84 Pa. 187; Com. v. Spencer, 6 Pa. Superior Ct. 256; Com. v. Major, 198 Pa. 290; Com. v. Grether, 204 Pa. 203.

OPINION BY MR. JUSTICE POTTER, January 5, 1914.:

In the first assignment of error here filed, counsel for appellant urge that the trial court erred in refusing to quash the array of jurors.

When the writ of venire was issued, it was attested in the name of "The Honorable R. W. ARCHBALD, President Judge of our said court at Scranton, &c.," whereas, in

fact, Judge ARCHBALD was not at that time a judge of the court below. The error resulted from the use, by the clerk, of an old blank in which the name of Judge ARCHBALD was printed, and his name was not erased therefrom when the writ went out, nor was the name of the present judge inserted. Subsequently, the court below permitted the writ to be amended in these particulars, but this was not done until the writ had been executed, and after the motion to quash had been made. With the exception noted, the writ was correct in every respect. It followed the form prescribed by the act of assembly; was issued in the name of the Commonwealth; signed by the clerk of the court, and sealed with the seal of the court. In Com. v. Smith, 2 S. & R., 300, decided in 1816, in the blank left in the printed form of venire, for the name of the president judge, no name was inserted. For this reason it was urged that the array of jurors should be quashed. It was held that the venire was superfluous, as the precept of the court was sufficient authority for the drawing of the jury. Defects in the venire were, therefore, immaterial. The Act of April 14, 1834, P. L. 333, prescribes the writ for the first time. But in the decision in Com. v. Smith, supra, Chief Justice TILGHMAN said: "What weighs greatly with the court, is that the errors assigned do not affect the merits of the case." So in the present instance the failure of the clerk to substitute the name of Judge ED-WARDS for that of Judge ARCHBALD, in the attestation of the writ does not in any way affect the merits of the case. The alleged defect was at most a clerical error, and the writ having been properly executed, was amendable. The venire was only a precept to the sheriff to summon the jurors drawn, and having answered its purpose, it cannot now be assailed for any mere irregularity not affecting substantial justice. The general principle is thus stated in 12 Ency. L. & Pr. 300, where it is said: "Unless the form or sufficiency of the order (to the officers charged with the duty of procuring jurors) is es-

sential to the validity of the action of the commissioners or other like officers, mere informalities or irregularities which do not cause a positive violation of statute may be disregarded."

In Rolland v. Com., 82 Pa. 306, where the jury commissioners omitted to make any return to the venire, Mr. Justice PAXSON said (p. 322) : "This omission could and ought to have been supplied by the court below as soon as its attention had been called to it by an order upon the jury commissioners to return the venire. It was but an amendment of the record, and a record may be amended even after writ of error or certiorari lodged in the office: In re Sheppard's Election, 77 Pa. 297.....The error is more formal than substantial, and the court below appears to have had such evidence before it as satisfied its conscience that the law had been complied with in all important particulars."

In Brown v. Com., 76 Pa. 319, Mr. Chief Justice AGNEW said (p. 336) : "In Dyott v. Com., 5 Whart. 67, (cited in the paper books) it was held that after a prisoner stands mute, a plea of not guilty is entered for him and he participates in the trial and is convicted the case falls within the Act of February 21, 1814, 6 Sm. L. 111, enacting that a trial on the merits, or pleading guilty on the general issue, shall be a waiver of all errors and defects in or appertaining to the precept, venire, drawing, summoning and returning of the jurors......We do not think this decision is applicable to a case where the prisoner makes his objections at first to the panel of jurors, and, on their being overruled, takes a proper bill of exceptions; but the decision is strongly illustrative of the unwillingness of courts to sustain objections to the jury, grand or petit, after a full and fair trial on the merits."

It appears, also, from the record in this case, that the jury wheel, which was sealed by the sheriff and both jury commissioners, there being three seals, was opened at the proper time in the presence of the sheriff and one

commissioner. The other commissioner was kept away by illness. This was alleged as an additional reason in support of the motion to quash the array of jurors. It was urged that the wheel could not be legally opened except in the presence of the sheriff and both commissioners.

The Act of April 10, 1867, P. L. 62, section 3, provides that the jury commissioners and sheriff, "or any two of them," shall draw from the proper wheel panels of jurors, &c. The terms of this act were met in the present case. But it is contended that the Act of March 18, 1874, P. L. 46, which was a supplement to the Act of 1867, changed the law. The Act of 1874 provided for the selection of a new panel when a challenge to the array of a former panel has been sustained, or the array quashed. In the first section, enumerating the instances in which a new panel may be chosen, it is said: "If by accident, mistake or neglect of the sheriff or jury commissioners of any county, or either of them, the wheel aforesaid has been opened, unlocked or unsealed, except in the presence of such sheriff and jury commissioners, and a challenge to the array has been sustained for any of the last-mentioned causes." This language, it is suggested, changed the requirements of the Act of 1867, and permits the wheel to be opened only in the presence of the sheriff and two commissioners. We do not see in it any intention to repeal or amend the Act of 1867, in this respect. Its purpose is to provide a method of supplying jurors when a previous array has been quashed. That is not the case here. The jury commissioners may be regarded as a body, and as such, the Act of 1867 authorizes one of them representing the body, and acting with the sheriff, to draw panels of jurors from the wheel. The power to draw from the wheel includes manifestly the right to open it. We are of the opinion that the court below was right in refusing to quash the array of jurors.

In the second and tenth assignments of error, counsel for appellant complain of the admission of evidence of

robberies at Simpson and at Throop, and of appellant's participation therein. An examination of the evidence shows that it was admissible for the purpose of showing, first, that appellant had a revolver; second, a motive for the killing; and that it was wilful and intentional and not accidental. It appeared from the testimony that on January 8, 1913, appellant was actively engaged in the robbery at Simpson, and on January 14th he took part in the robbery at Throop. On both occasions he had in his possession and exhibited a revolver. After the Simpson robbery he said to one of his associates in the crime that if the policemen should come, he would run, and if he couldn't run, he would shoot. On January 16, the officers came to his home with warrants for the arrest of two of his associates, charging them with the robberies. He was present when the arrests were made and offered to go up stairs and get the coats of the prisoners When he came into his room up-stairs, he said to his room-mate, Funk, who was there, that the policemen had come after Davitt and "they are going to take me and I think I better run away." He then took a revolver from his trunk and with the aid of a bed-spread which Funk held, let himself down from the second-story window into the yard, holding the revolver in his hand. When he reached the ground he ran away. In a minute or less two shots were heard, and immediately afterwards McAndrew called out, and was found in front of the house where he had been on guard, suffering from two bullet wounds, one of which caused his death two days later. He said he had been shot by a man in a dark suit and wearing a derby hat, who had run out towards the front of the house and had gone down the street. A witness who lived across the street from appellant's home heard the shots and saw a man running away, wearing a derby hat and holding a revolver in his hand. There was also testimony that appellant usually wore a black derby hat. The day after

the shooting appellant gave a revolver to his cousin who threw it into the river.

If the jury believed this testimony, it was sufficient to justify the conclusion that appellant was alarmed by the presence of the officers, and fearing arrest for the robberies in which he had participated a few days before, attempted to escape. That in pursuance of a previously expressed purpose, he armed himself with a revolver in order to shoot if he could not otherwise get away. Meeting an officer in front of the house, he did shoot. The testimony as to his participation in the robberies was relevant. It tended to show intention to commit, and motive for, the alleged crime. The distinction as to such evidence is thus stated in 2 Wharton on Crim. Ev. (10th Ed. 1912) sec. 920, where it is said: "The well-settled rule that evidence of collateral crimes cannot be introduced on the trial of the homicide charge, is subject to an exception where the collateral crime precedes, or is contemporaneous with, or a part of the charge on trial, and the circumstances surrounding the collateral crime are essential to proof of or to explain the crime charged." And in 12 Cyc. 410, it is said, on p. 410: "Evidence to show the motive prompting the commission of the crime is relevant and admissible notwithstanding it also shows the commission by the accused of another crime of a similar or dissimilar character. Thus it may be shown that the crime was committed for the purpose of concealing another crime, or to prevent the accused from being convicted of another crime."

Under these well established principles, the trial court was clearly right in admitting evidence of appellant's participation in the robberies. All the assignments relating to the admission of evidence as to this fact are overruled.

In the thirty-first assignment it is alleged that the trial judge erred in that portion of the charge relating to the dying declaration of McAndrew. The statement

of the court in this respect was fitting and proper. The declaration referred to was favorable to appellant, in that McAndrew said the man who shot him came out of the front door, while the evidence shows that appellant descended from the second story window of the house. In the refusal of the court below to grant a new trial, there is not the slightest indication of any abuse of discretion.

In none of the other assignments do we find anything that is worthy of discussion in detail. We discover no error in the record. It shows that appellant had a fair and impartial trial, and that the verdict was warranted by the evidence.

The sentence and judgment of the court below is, therefore, affirmed, and it is ordered that the record be remitted for the purpose of execution.