## McPeek v. Shafer, Appellant.

426

Argued December 10, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Francis J. Gafford,* of *Smith & Paff,* for appellant.

*Carleton T. Woodring,* of *Walter, Woodring & Strausburg,* for appellee.

OPINION BY STADTFELD, J., January 31, 1936:

This was an action on a parol contract brought by Frederick McPeek, a sub-contractor, against Howard Shafer, the general contractor.

In the Spring of 1929, Howard Shafer was awarded the contract by the State Highway Department to construct the highway on the State Road from Durham Furnace to Springtown in Bucks County, Pennsylvania. On account of the time limit contained in this contract, Shafer was desirous of sub-letting the building of a concrete bridge, a culvert, and the concrete headwalls on the line of the improved highway which he had contracted to build.

Plaintiff's statement averred that on or about July 25, 1929, plaintiff, in writing, made a certain offer to Howard Shafer, defendant, to construct one bridge and one culvert on the above mentioned road, at certain unit prices, which offer defendant orally accepted, payment to be made to plaintiff on the completion of the work; that in addition to said contract to build the bridge and culvert, plaintiff submitted a unit price for the construction of head-walls; that shortly after the said 25th day of July, 1929, plaintiff and defendant agreed orally that the construction of the headwalls was to depend upon the cooperation evidenced by and between the parties in the plaintiff's construction of the said bridge and culvert; that defendant not only failed to cooperate with the plaintiff in said construction, but actively hindered and obstructed plaintiff in his said employment, that as a result of said hindrance and failure of cooperation, plaintiff, on or about September

1, 1929, orally notified defendant that he, plaintiff, would not construct the headwalls; that in accordance with said contract, plaintiff constructed one bridge and one culvert; that in accordance with the unit prices specified in plaintiff's written offer, there is due to plaintiff $2,465.92, with interest from December 1, 1929.

Defendant's affidavit of defense averred that pursuant to a verbal contract between plaintiff and defendant, plaintiff submitted in writing the unit figures in the form of a letter attached to plaintiff's amended statement of claim; that sometime prior to July 25, 1929, plaintiff and defendant verbally agreed that plaintiff would do all the concrete work on said road, including the headwalls, and that plaintiff was to confirm and submit the prices in writing; that the said letter of July 25, 1929 was only to represent and show the unit prices for doing the concrete work, including the headwalls, and that by accident or mistake, plaintiff omitted from said written proposition that plaintiff was to do all the concrete work on said road, including the headwalls; that the written confirmation was not in accordance with the full verbal agreement, in that it failed to state that the headwalls were to be constructed by plaintiff. Defendant denied that the construction of the headwalls was to depend upon the cooperation evidenced by and between the parties in the plaintiff's construction of the bridge and culvert, and denied that defendant failed to cooperate in said construction, or that he hindered and delayed the plaintiff, or that defendant as a result of said alleged hindrance and failure to cooperate, did orally notify defendant that he, plaintiff, would not construct the headwalls and averred that said notification was the acknowledged breach by plaintiff, of said verbal agreement as stated. Defendant admitted the construction of one bridge and one culvert and the amount claimed therefor by plaintiff, and averred that on March 24, 1931, defendant paid plaintiff $1490.16. As against the balance due, defendant

claimed a set-off in the nature of a counter claim in the sum of $1082.94, the extra cost of constructing the head-walls by reason of plaintiff's default.

The case came on for trial before the court and a jury in which the court submitted the case to the jury on the respective contention of the parties in a charge to which no exceptions were taken.

The jury rendered a verdict in favor of plaintiff for the whole of the principal amount under the contract with interest, disallowing defendant's claim for damages. A motion ex parte defendant for new trial was overruled in an opinion by STEWART, P. J., and judgment entered on the verdict. From that judgment, this appeal was taken.

The only assignment of error is the refusal of motion for new trial. This motion sets forth fourteen reasons in support thereof, but we will refer only to those treated in appellant's brief.

(a) That the verdict was against the overwhelming weight of the evidence in the case.

The action was based under the pleadings and the evidence, on a parol contract. The case involved a clear conflict of testimony which was sufficient to submit to the jury. The trial court, by its charge, allowed the jury to determine the credibility of the witnesses and to find the facts. No exception was taken to the charge. As stated in Heyman, Admrx., v. Hanauer, 302 Pa. 56, 152 A. 910, at p. 57: "A new trial will not be granted on the ground that the verdict was contrary to the weight of the evidence, where the testimony is hopelessly conflicting, and the jury were obliged to choose between the credibility of the witnesses for plaintiff and those for defendant, and there was ample evidence from which they might have reached a conclusion either way."

The granting or refusal of a new trial rests in the sound discretion of the court, and unless there has been

an abuse of that discretion, we will not reverse the judgment: Copperthwaite v. Jones, 2 Dallas, 55; Dravo Contracting Co. v. Rees & Sons Co., 291 Pa. 387, 140 A. 148; First National Bank of New Jersey v. Cattie Bros., 285 Pa. 202, 131 A. 731.

(b)   That the court refused to have read to the jury, upon their request, after retirement and return to open court, a certain portion of the testimony vitally necessary to their disposition of the case.

The foreman of the jury requested to have read the conversation that took place at the time the verbal agreement was made and confirmed by letter.   The court stated in reply, that this would involve the reading of the testimony of the three parties who were there and it would take a considerable length of time to pick out the testimony and read just a part of it.   The court then proceeded to instructions on its own recollection of the testimony, and then asked: "Does that answer your difficulty?"   The foreman replied: "Yes, sir.   They seem to think that this is not a contract."   By the court: "No, that is not a contract."   By the foreman: "It is a confirmation of a verbal contract."   By the court: "It is a confirmation as to prices of what Shafer said was agreed on down there ......".   No exception was taken to the additional instructions.

The cases cited by appellant have no application. They involved the converse of the question raised here. In them the error assigned was the reading of a portion of the testimony upon the request for additional instructions.   In Cunningham v. Patton, 6 Pa. 355, the Supreme Court said: "We can perceive no well founded objection, therefore, that the court should refresh their memories when they (the jury) request it, or instruct them further in relation to the law."   The same is true of Commonwealth v. Bolger, 42 Pa. Superior Ct. 115. The authorities on this question are collated by our Brother BALDRIGE in DiSanto v. Alper, 99 Pa. Superior

Ct., 46, wherein he says, at p. 51: "This discretion is an incident to the mode and manner of the trial and must be left to the courts, and, unless in a flagrant exercise of it, is not reviewable."

Appellant further contends: (c) The jurors were not sufficiently intelligent and judicious persons, as required by the Act of Assembly of 1867, P. L. 62, to enable them to comprehend the charge of the court and render a true verdict in the case.

To support this proposition, the depositions of ten jurors were taken, most of them deposing that in their opinion, to constitute a binding contract, it would have to be in writing, signed by both parties. They understood that the letter offered in evidence was not a contract, according to the instructions of the trial judge. They all understood, however, that they (the jurors) would have to decide the facts but would have to take the law as instructed by the court. The trial Judge instructed the jury that: "In the first instance you ought to get your minds back and say: Was there a contract for the building of the whole of the concrete work; and if you believe that was the contract, made two days before this letter was written, McPeek having admitted that he did not build the headwalls, your verdict would have to be in favor of the defendant. On the other hand, if you believe McPeek's version of the contract then your verdict would be in favor of the plaintiff for the amount of his claim with interest."

An examination of the charge shows that the court was very careful and explicit in explaining the contention of each side, and we cannot say, after a careful examination of the depositions, regardless of whether they were competent, that the jury deliberately disregarded these instructions in arriving at a verdict.

While it is true that most of the jurors testified that a contract had to be written and signed by both parties, a complete reading of the depositions discloses that the jurors, in their examination really considered the ques-

432

tion whether or not the letter (Exhibit No. 1) was a contract.

It is a well established principle, recognized in a long line of cases, that the testimony of jurors is inadmissible to impeach their verdict. In the early case of Cluggage v. Swan, 4 Binney 150, Mr. Justice YEATES said, at p. 158: "I frankly confess that I feel the utmost repugnance to such testimony, although I am fully aware, that I thereby exclude almost the only evidence, which the case naturally admits of. But by admitting it I as readily perceive, that I should open a door to the exercise of the most pernicious arts, and tampering with jurors; and that the practice would be replete with dangerous consequences. Jurors, who have been sworn or solemnly affirmed to give a verdict according to evidence, come with a bad grace into a tribunal of justice to prove their own dishonorable conduct, and affix a stigma on their companions who may be unheard in their defence. ...... But above all, I greatly fear that the practice if adopted, would tend to an inquisition over the consciences of jurors, as to the grounds and reasons of their verdict, and bring questions of fact more frequently before the court for their decision, than is consistent with sound policy. I am opposed to penetrating into the recesses of a jury-room, through the instrumentality of jurors, who are kept together until they have agreed upon their verdict. The settled rule in New York and Virginia, as well as the most modern English authorities, are adverse to the receiving of such testimony and I cannot discover why we should be more inattentive to the reputation and feelings of our jurors. Upon the whole, after the fullest consideration, I am of opinion, that the testimony of jurors ought not to be admitted to invalidate their own verdicts."

In Smalley v. Morris, 157 Pa. 349, 358, 27 A. 734, the Supreme Court said: "To sanction the introduction of affidavits made by some of the jurors after their verdict

has been received and recorded by the court would be fraught with the most dangerous consequences."

In Commonwealth v. Clay, 56 Pa. Superior Ct., 427, the defendants presented a petition praying that the jurors be examined, and required to testify as to their proceedings. The lower court refused to order it. This court said, at p. 464: "It is well settled that jurors, after they have rendered a verdict, ought not to be admitted to give testimony to invalidate that verdict: Cluggage v. Swan, 4 Binney, 150; Holt v. United States, 218 U. S. 245; and these specifications of error must be over-ruled." See also Commonwealth v. Bergdoll, 55 Pa. Superior Ct., 186; Commonwealth v. Wilson, 19 Northampton Co. Rep. 114; and Friedman v. Ralph Brothers, Inc., 314 Pa. 247, 171 A. 900.

In the last case cited, Mr. Justice KEPHART said, at p. 249: "Jurors cannot impeach their own verdict. Their deliberations are secret and their inviolability must be closely guarded. Only in clear cases of improper conduct by jurors, evidenced by competent testimony, should a verdict, which is fully supported by the evidence, be set aside and a new trial granted."

The case of Mix v. North American Co., 209 Pa. 636, 59 A. 272, cited by appellant, is readily distinguishable from the instant case. In that case, attempts were made to discuss the trial with at least three of the jurors. Such conduct was certainly improper and involved a fraud on the parties and the court. It is only right that the fraud should be discovered even though it involves the testimony of jurors. In such case, the testimony is directed against third parties. In the instant case, the testimony of the jurors is for the purpose of impeaching their own verdict.

Appellant further contends: (d) The selection of the names for the jury wheel, the filling of the jury wheel, and its sealing, was not done in the manner required by the Acts of Assembly.

In support thereof, he cites several alleged violations

434

of the act and failure to comply with its provisions. Without undertaking to pass upon the merits of their objections, we are of the opinion that the objections relied on were taken too late. Defendant made no motion to quash the array, nor in any other manner excepted to the jury array or the panel. Defendant entered into the trial on the pleadings, presented his defense and took his chances on the verdict. After the verdict, he filed a motion for a new trial, assigning fourteen reasons in support thereof, the sixth one raising the question of the regularity of the selection of the jury. In the case of In the matter of Drawing of Panels of Grand and Petit Jurors, 91 Pa. Superior Ct., 229, this court, in a very comprehensive opinion by our Brother CUNNINGHAM, where the subject is fully reviewed, said at p. 236: "...... an agreement to try on the merits or a plea of guilty or of the general issue is a waiver of such defects as are alleged in this case: Commonwealth v. Freeman, App., 166 Pa. 332, a case in which the wheel was not properly sealed; and Commonwealth v. Eagan, 190 Pa. 10, where the wheel was not properly sealed and was not kept in the proper custody." See also McDermott v. Hoffman, 70 Pa. 31; Wistar v. Ollis, 77 Pa. 291; Commonwealth v. Chiemilewski, 243 Pa. 171, 89 A. 964. The question is not an open one in this commonwealth and requires no further citation of authorities.

We see no merit in any of the contentions of appellant. The assignment of error is overruled and judgment affirmed.