Commonwealth *v.* Eberhardt et al., Appellants.

Argued March 25, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*Irving W. Coleman,* with him *Jerome W. Burkepile, Jr.,* for appellants.

594 

*Carl A. Niehoff*, District Attorney, for appellee.

OPINION BY RHODES, P. J., July 15, 1949:

The six defendants have appealed from conviction and sentence on a charge of common law rape allegedly committed by each of them upon the complainant. The one indictment contained three counts: (1) Common law rape, (2) assault and battery, and (3) contributing to the delinquency of a minor. Defendants were found guilty by a jury on all counts. They were severally sentenced on the count charging rape.

The first question presented on these appeals by defendants relates to the refusal of the court below to quash the indictment and the array of petit jurors. These motions to quash were based on admitted defects in the venire summoning the grand jury, and the venire summoning the petit jury. Both writs of venire were concededly defective in the following respects: (1) They did not bear the signature of the Clerk of the Court of Oyer and Terminer and General Jail Delivery, and the Court of Quarter Sessions of the Peace of Carbon County; (2) they contained no date of issuance; (3) they did not bear the seal of the office of the clerk; (4) they contained no direction as to the date upon which the respective jurors were to appear for the performance of their duties; and (5) although the writs were returned by the sheriff, no date appeared as to when the return was made.

The precepts or orders issued by President Judge JAMES C. McCREADY directing the clerk of the several courts of Carbon County to issue writs of venire commanding the sheriff and jury commissioners to empanel and the sheriff to summon a grand jury and a petit jury, respectively, were admittedly proper precepts. Defendants' motions to quash the indictment and the array of petit jurors were made on June 8, 1948. Argument was had and the court dismissed both motions. Like-

wise, on June 8, 1948, the district attorney presented an ex parte petition to the court asking that the two writs of venire be amended to correct the enumerated defects. On June 9, 1948, the court entered an order directing that the writs of venire be thus amended and corrected. In this amending order the court also directed that the name of James C. McCready be substituted for that of his predecessor, William G. Thomas, as president judge.

The issuance of writs of venire in criminal cases is prescribed by the Act of April 14, 1834, P. L. 333, §108 et seq., 17 PS §1031 et seq. Section 108, 17 PS §1031, provides for the issuance of the writ by the clerk of the courts of oyer and terminer and quarter sessions "upon the order or precept of the said court." Section 109, 17 PS §1032, prescribes the form of the writ of venire for a grand jury, and section 111, 17 PS §1034, prescribes the form of the writ for a petit jury.

Defendants' counsel argues that these admitted defects in the writs of venire were defects of substance which invalidated the grand jury proceedings, the indictment, the petit jury, the trial, and the verdict. After careful consideration of defendants' contentions, we are of the opinion that the defects were matters of form and not of substance; and that the Act prescribing the form of the writs as to these matters is directory only and not mandatory.

In *Com. v. Chiemilewski*, 243 Pa. 171, 89 A. 964, a murder case, the trial court refused to quash the array of petit jurors where the writ of venire was improperly attested in the name of one who was not at that time a judge of the court. The writ was correct in other respects, and was in the form prescribed by the Act of Assembly (Act of April 14, 1834, P. L. 333). In affirming the lower court's refusal to quash the array, the Supreme Court stated, page 175 of 243 Pa., page 965 of 89 A.: "In Com. v. Smith, 2 S. & R. 300, decided in 1816,

in the blank left in the printed form of venire, for the name of the president judge, no name was inserted. For this reason it was urged that the array of jurors should be quashed. It was held that the venire was superfluous, as the precept of the court was sufficient authority for the drawing of the jury. Defects in the venire were, therefore, immaterial. The Act of April 14, 1834, P. L. 333, prescribes the writ for the first time. But in the decision in Com. v. Smith, supra, Chief Justice TILGHMAN said: 'What weighs greatly with the court, is that the errors assigned do not affect the merits of the case.' So in the present instance the failure of the clerk to substitute the name of Judge EDWARDS for that of Judge ARCHBALD, in the attestation of the writ does not in any way affect the merits of the case. The alleged defect was at most a clerical error, and the writ having been properly executed, was amendable. The venire was only a precept to the sheriff to summon the jurors drawn, and having answered its purpose, it cannot now be assailed for any mere irregularity not affecting substantial justice."

It has also been held that the failure of jury commissioners to make any return to a venire is an error more formal than substantial, and that the record may be amended even after the appeal has been taken. *Rolland v. Com.*, 82 Pa. 306.

In *Com. v. Nye*, 240 Pa. 359, 87 A. 585, the Supreme Court affirmed an order refusing to quash the array of jurors. There the sheriff had summoned the jurors by mail rather than in accordance with section 125 of the Act of April 14, 1834, P. L. 333, 17 PS §1091, which requires summons "by delivering to each of the said persons a separate ticket, in the customary form, specifying the duty enjoined, or by leaving such ticket at their usual places of abode, respectively." It was held that the provisions of the Act of 1834, regulating the draw-

ing and summoning of jurors, were directory in character and did not bear upon the substance of any duty.

In *Com. v. Wiswesser,* 134 Pa. Superior Ct. 488, 3 A. 2d 983, defendant was convicted of embracery. His contention on appeal was that he was not a summoned juror, within the definition of the offense of embracery, until he had received an official notification that he had been chosen for jury duty. In holding that he became a juror the moment his name was drawn from the jury wheel, we said, page 492 of 134 Pa. Superior Ct., page 985 of 3 A. 2d: "The venire issued by the court is a summons and he becomes a juror the moment his name is dropped from the jury wheel. He is then a juror summoned, by authority of the court, for jury duty. It is true that the law provides a method by which the jurors are notified that they are chosen, but this is but a provision showing how the juror shall be notified, and at that not an exclusive method. It is directory, not mandatory."

In the present case the errors and omissions in the form of the writs of venire used to summon the grand and petit juries did not affect the merits of the case in any manner, and they did not result in prejudice to defendants. The grand and petit juries summoned were, in all respects, the same as though the writs of venire had been in perfect form. The precepts of the court were proper, and they were sufficient authority. *Com. v. Chiemilewski,* supra, 243 Pa. 171, 175, 89 A. 964. See *Com. v. Seybert,* 4 Pa. C. C. 152. Whatever may have been the rule at common law the primary function of the writ of venire and the return thereto under modern statutory methods of summoning jurors is to identify the jurors summoned. The judgment will not be reversed for defects in the issuance or the return of the venire which do not result in prejudice to the defendant. Thompson & Merriam on Juries (1882), §§67-70, pp. 65-67. The errors and irregularities here were, at most, cumulative.

The court below properly permitted the writs and record to be amended and corrected. (*Rolland v. Com.*, supra, 82 Pa. 306; *Com. v. Chauncey*, 2 Ashmead 90; *Com. v. Miller*, 4 Phila. 210); and it was not error to refuse defendants' motion to quash the indictment and the array of petit jurors.

Defendants next allege an improper joinder in the bill of indictment of count for (a) rape, a felony, exclusively triable in the court of oyer and terminer, with counts for (b) assault and battery, and (c) contributing to the delinquency of a minor child, the latter two being misdemeanors triable in the court of quarter sessions. The indictment, containing the three counts, bore the double caption of No. 5, June Sessions, 1948, Quarter Sessions of the Peace in and for Carbon County, and also No. 1, June Sessions, 1948, Court of Oyer and Terminer and General Jail Delivery.

We think it is clear at this point that there was no misjoinder of felonies and misdemeanors as such. A felony and a misdemeanor may be joined in the same indictment where the offenses charged are not repugnant in their nature and legal incidents, and the trial and judgment so incongruous as to tend to deprive the defendant of some legal advantage. *Henwood v. Com.*, 52 Pa. 424; *Stevick v. Com.*, 78 Pa. 460, 463; *Hunter v. Com.*, 79 Pa. 503, 507; *Com. v. Antico*, 146 Pa. Superior Ct. 293, 305, 22 A. 2d 204. Assuming a misjoinder existed, it was tolled by the pronouncement of only one sentence—the sentence on the rape conviction. *Com. v. Antico*, supra, page 305. In this connection defendants assert that the trial judge did not properly make a certification of the misdemeanor counts in the bill of indictment to the Court of Oyer and Terminer. Before plea defendants' counsel argued orally to the trial judge that the misdemeanors could be tried only in the Court of Quarter Sessions and could not be certified to the Court of Oyer and Terminer for trial with the rape charge.

Near the conclusion of this argument, upon motion of the district attorney, the court certified the misdemeanor counts into the Court of Oyer and Terminer. The certification was not otherwise entered on the record.

Defendants have no standing on this appeal to question their trial in the Court of Oyer and Terminer on the misdemeanor counts. The jurisdiction and the power of courts of quarter sessions of the peace are set forth in section 32 of the Act of March 31, 1860, P. L. 427, 17 PS §361. Section 31 of the Act, 17 PS §391, defining the jurisdiction of courts of oyer and terminer and general jail delivery, gives said courts jurisdiction "To try indictments found in the quarter sessions, and certified by the said court according to law; . . ." By this same section the oyer and terminer is given exclusive jurisdiction in cases involving charges of rape. In the present case the court certified the misdemeanor charges from the Court of Quarter Sessions to the Court of Oyer and Terminer. Under section 32 of the Act of 1860, 17 PS §361, such indictments found in and duly certified from the court of quarter sessions may be tried in oyer and terminer. Com. v. Shutte, 130 Pa. 272, 18 A. 635. If we assume that the record in the instant case does not show a proper certification, the failure is at most a formal defect which may be corrected even after appeal taken. Com. ex rel. Greevy v. Reifsteck, 271 Pa. 441, 444, 115 A. 130; Com. v. Torr, 111 Pa. Superior Ct. 178, 181, 169 A. 238. See, also, section 1, Act of May 10, 1927, P. L. 879, 17 PS §392. Defendants have not shown or suggested that they suffered any prejudice in their defense on the merits or that a failure of justice has resulted by reason of any lack of any formal certification to the Court of Oyer and Terminer. Com. v. Torr, supra, page 182.

Defendants present several assignments which relate to the sufficiency of the evidence to support the convictions. We are satisfied that the evidence is sufficient;

and the defendants' counsel does not seriously argue otherwise. The main contention is that the Commonwealth was bound by the exculpatory statements in the admissions of defendants, and that a reasonable doubt was thereby raised which should have resulted in a directed verdict of acquittal.

The complainant, Joanne Heffelfinger, being slightly over the age of sixteen years, left her home at Palmerton, Carbon County, on Sunday evening, April 11, 1948, and went to the home of a Mrs. Recker in Lehigh Gap, Carbon County, on the outskirts of Palmerton. She found Mrs. Recker in Mike Mula's tavern or taproom which was nearby. In the taproom she met the six defendants for the first time. They danced with her and treated her decently while in the taproom. About 11 p.m., as she was about to leave, one of the defendants, Gassler, said he would take her home. She entered his car, which was parked in front of the taproom. When she noticed another defendant on the back seat of the car, she refused to go with Gassler and jumped out of the car. The other defendants came out of the taproom with a case of beer. One of them seized her, another struck her in the face and she became unconscious. She was picked up, placed in the back seat of the car, and taken to a lonely road, where the six defendants in succession proceeded to rape her. One of the defendants, Gassler, is alleged to have repeated the offense. It clearly appears that the acts of intercourse were by force and without complainant's consent. As defendants would not take her home she endeavored to obtain her freedom by telling them that she could find girls for them in Slatington. Defendants then drove her to Slatington. She went to the house where her mother lived in order to obtain help. Her mother was not at home. Followed by defendants she went to a neighboring house where she saw a light. The elderly couple who lived in this house corroborated complainant and testified that she asked for help. The

husband identified the defendants. He testified that they came on his porch and refused to leave until the girl went with them, and that they threatened to burn his house unless he released the girl immediately. As they left one of the defendants held complainant by the arm. She freed herself and ran to another house where there was a light. Commonwealth's witness George Warner, who, with his wife, occupied this house, described how complainant appeared on his porch about two thirty on the morning of April 12, 1948, and implored his assistance. He described her condition. Her hair was disheveled, her eyes were swollen, and her clothes were mussed; there was blood on the left side of the coat. Three of the defendants who were in front of Warner's house told him that complainant was their girl friend in the face of her denial. Warner insisted that the defendants leave. Thereupon he and his wife gave complainant refuge.

Two occupants of the apartments directly over the taproom corroborated the fact that complainant was assaulted and carried off in a car by defendants. A third also heard her scream.

Paul Bynon, County Detective of Carbon County, testified, on direct examination, that all of the defendants under separate questioning in his presence in the district attorney's office on April 14, 1948, admitted that they had intercourse with complainant on the morning of April 12, 1948. On cross-examination, defendants' counsel elicited the fact that defendants' admissions as to intercourse were qualified by the statement that in each instance such intercourse was, according to defendants, without force and with the consent of the complainant. The district attorney subsequently called Lawrence R. Campbell, Probation Officer of Carbon County, and Oscar Arnold, Chief of Police of Palmerton, who likewise testified to defendants' oral confessions, in the district attorney's office, of intercourse with com-

plainant. Officer Campbell testified under direct examination that defendants' confessions of intercourse included the fact that such intercourse was without force. Officer Arnold, on direct examination by the district attorney, acknowledged that defendants' confessions of intercourse were qualified as being both without force and with consent. Defendants, in the exercise of their constitutional rights, did not take the stand. The only evidence offered by them was the testimony of the principal of the school which complainant had attended. He testified that her reputation for chastity and morality was not good.

There is no merit in defendants' contention that the Commonwealth failed to make out a case because the testimony of the witnesses of the Commonwealth showed confessions which negatived two necessary elements of rape—force, and absence of consent. Other evidence in the record establishes these two elements of the crime charged. Where the Commonwealth offers in evidence a confession of a defendant, it is not bound by statements therein favorable to the defendant, but may contradict such statements by other proof. *Com. v. Rush*, 277 Pa. 419, 423, 121 A. 111; *Com. v. Jones*, 297 Pa. 326, 335, 146 A. 905; *Com. v. Long*, 131 Pa. Superior Ct. 28, 34, 198 A. 474.

Complaint is made of that portion of the charge of the court wherein the trial judge, after referring to defendants' evidence that the reputation of Joanne Heffelfinger for chastity and morality was not good, stated: "You will weigh that testimony in consideration with all the other testimony of Joanne Heffelfinger in determining the credibility of her testimony." Immediately following this portion of the charge the trial judge affirmed and read to the jury defendants' points as follows:

"The Jury should be instructed that evidence of bad reputation for morality and chastity is such evidence

[from] which the Jury could come to the conclusion that the carnal knowledge was with the consent of the female, Joanne Heffelfinger.

"The girl admitted that she was not a virgin on the night of April 11, 1948. The Jury should be instructed that this fact, together with evidence of bad repute for morality and chastity, could be a basis for a finding by the Jury that the carnal knowledge by them was with her consent."

The trial judge set forth the three elements of common law rape—carnal knowledge, force, absence of consent—and told the jury that if any one of these elements was missing the verdict must be not guilty. Defendants contend that evidence of the bad reputation of the female for chastity and morality has no bearing upon her credibility but could only be considered by the jury as substantive evidence bearing on the question of her consent. At common law, and under the statute (Act of June 24, 1939, P. L. 872, §721, 18 PS §4721), evidence of bad reputation for chastity is admissible on a rape charge as substantive evidence bearing on the question of the female's consent. Wigmore on Evidence, 3d Ed., vol. I, §62; Com. v. Calvery, 130 Pa. Superior Ct. 575, 198 A. 450; Com. v. San Juan, 129 Pa. Superior Ct. 179, 195 A. 433; 44 Am. Jur., p. 958, §90; 140 A. L. R. 364, 380. Under the modern view the unchaste character of the woman in a rape case has a direct connection with her general credibility or veracity on all the elements of rape. Wigmore on Evidence, 3d Ed., vol. III, §924a; 44 Am. Jur., p. 963, §97. The previous want of chastity may be shown by proof of reputation. 44 Am. Jur., p. 960, §92. In the present case the complainant had testified to intercourse by force and without her consent, and to the extent that evidence of her bad reputation for chastity tended to show consent on her part it necessarily had a direct bearing on her credibility. It is not necessary for us to go so far as to hold that bad reputa-

tion for chastity would affect her credibility generally and as to all the elements of the crime charged. Suffice it to say that the credibility of the evidence of the female in a trial involving a rape charge is vital and of great importance. *Com. v. Berklowitz*, 133 Pa. Superior Ct. 190, 195, 2 A. 2d 516. For these reasons we think the questioned portion of the charge was substantially correct and had no tendency to mislead the jury. This is true especially when it is considered with what followed; defendants have no basis for complaint as the instructions were in conformity with their request.

Defendants further allege error because the trial judge in the charge stated, inter alia: "No testimony has been given on the part of these Defendants, but, irrespective of that fact, you must be certain that the evidence upon which you base your verdict is credible evidence, truthful evidence. You must apply the test of credibility in this case just as though there were controversial evidence, evidence on the part of the defense contradicted and contradicting that evidence given by the Commonwealth." Counsel for defendants argues that by this statement the trial judge told the jury they offered no evidence, whereas, in fact, they had produced the testimony of the principal of the Palmerton High School to establish the bad reputation of the girl for chastity. But the charge must be considered as a whole (*Com. v. Hamilton*, 148 Pa. Superior Ct. 169, 176, 24 A. 2d 656); and only basic and fundamental errors in the charge are reached by a general exception (*Com. v. Ricci*, 161 Pa. Superior Ct. 193, 196, 54 A. 2d 51).[1] The trial judge instructed the jury that defendants' failure to take the stand was the exercise of a constitutional right, and that such failure to testify could not be used

---

[1] Counsel for defendants took only a general exception to the charge of the court except as to two matters which are not involved in the present appeals. 332a.

against them. He also in the charge reviewed at length the reputation testimony of the high school principal as that of the only witness called by defendants, and, as it clearly appears, he instructed the jury as to the effect of such reputation testimony. In the light of the entire charge the quoted portion went no further than to properly tell the jury that the testimony of the girl was subject to the test of credibility even though defendants in person had not taken the stand and contradicted her.

The trial judge complied with the request of defendants' counsel for further instructions when he told the jury that the admissions offered by the Commonwealth, made by the defendants in the presence of the police officers after their arrest, showed intercourse with Joanne Heffelfinger only after obtaining her consent. The charge was fair to defendants and contained no reversible error.

Defendants' objections to the admission of evidence are without merit. The testimony of Helen M. Lloyd, who lived in an apartment above Mike Mula's tavern, that she was awakened by hearing a woman scream, and that she looked out and saw young men around a parked car, was clearly relevant and admissible. As the court below pointed out, this testimony established the fact a woman's scream was heard about that time and place, and tended to corroborate the testimony of other witnesses. Police Officer Steigerwalt was permitted to testify to Joanne Heffelfinger's complaint that she had been raped by six men, which was made to him when he appeared on the scene about 2:30 a. m. the morning of April 12, 1948. Prompt complaint by the victim to third persons is admissible in evidence in a rape prosecution. *Com. v. Didomenico*, 131 Pa. Superior Ct. 113, 116, 198 A. 909; *Com. v. Nowalk*, 160 Pa. Superior Ct. 88, 50 A. 2d 115. The fact complainant had shortly before made the same complaint to other persons did

not in this case make the complaint too remote from the time of the alleged rape.

Likewise it was entirely proper to admit the testimony of Lawrence R. Campbell as Commonwealth's witness in rebuttal of the testimony of the principal of the Palmerton High School who had testified that Joanne Heffelfinger bore a bad reputation for chastity. Campbell denied the statements attributed to him. See *Com. v. Woloszchuk*, 133 Pa. Superior Ct. 470, 474, 3 A. 2d 10. The scope of rebuttal testimony was a matter largely within the trial court's discretion. *Com. v. Carelli*, 281 Pa. 602, 607, 608, 127 A. 305.

We find no reversible error in this record; defendants were given a fair trial; the defense has been ably presented both at the trial and on appeal; the verdict of the jury was entirely justified. See *Com. v. Johnson*, 279 Pa. 40, 44, 123 A. 638.

Judgments and sentences are affirmed.