Commonwealth *v.* Crider (Creider), Appellant.

Submitted March 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Richard D. Walker*, Public Defender, for appellant.

*Marion E. MacIntyre* and *Edwin W. Frese, Jr.*, Deputy District Attorneys, and *LeRoy S. Zimmerman*, District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., March 29, 1976:

Appellant was convicted by a judge sitting without a jury of forcible rape, and on February 22, 1973, following the denial of post-verdict motions and the completion of a pre-sentence investigation, was sentenced to serve three and one half to seven years in prison and to pay the costs of prosecution. On July 1, 1974, in response to appellant's Post Conviction Hearing Act petition, the lower court filed an order allowing appellant to appeal *nunc pro tunc* from the judgment of sentence.

The statute in effect on the date of appellant's conviction was the Act of June 24, 1939, P.L. 872, §721, as amended 1966, Special Sess. No. 3, May 12, P.L. 84, §1, 18 P.S. §4721, which read in pertinent part: "Whoever has unlawful carnal knowledge of a woman, forcibly and against her will, is guilty of rape ...."

The incident giving rise to the charge of rape occurred on July 5, 1971. On the evening of that date, Susan Baker, age 16, was walking her dog on a rural road when three men - appellant, Phillip Stoner, and

Darryl Selby - drove up in a pickup truck, and began to talk with her. During the conversation Susan noticed cows escaping from a nearby pasture and asked the men to help her herd them back inside the fence. While in the field doing this, appellant forced Susan to the ground, removed her clothing below her waist with the help of Stoner, and had sexual intercourse with her forcibly and without her consent.[1] When a police car stopped near the parked pickup truck, appellant and his two companions fled across the field. Appellant was arrested later that evening at the home of a friend.

On this appeal appellant contends that the trial court erred in refusing to permit cross-examination of the prosecutrix as to her prior sexual experience, and that the verdict was against the weight of the evidence.

I

On cross-examination of the prosecutrix, defense counsel asked: "Had you had sexual relations with a male before this night?" When the Commonwealth objected that the question was irrelevant, defense counsel said: "Your Honor, she has testified she had sexual relations with this man and it is possible for a young girl and she is young not to know the full ramifications of that term and I would like to explore it on cross-examination." The court properly sustained the objection.

It is preposterous to contend, as appellant seems to, that a person must have experienced sexual intercourse to know what it is. If counsel doubted the prosecutrix's comprehension, he could have asked her to define sexual intercourse. Instead, he only asked the following:

"Q. Who told you to use the word penetrated?

"A. I figured it meant intercourse, which it does, and to me it meant intercourse and he did.

---

1. Stoner was also charged with rape, but he pleaded guilty to assault with intent to ravish. His plea was accepted and he testified as a Commonwealth witness.

"Q. Well, then you are saying no one told you to use the word penetrated?

"A. I asked my mom if that's what it meant; and she said it did."

We have held elsewhere that "the word 'intercourse' has a common meaning which is generally understood." *Commonwealth ex rel. Wood v. Maroney*, 199 Pa. Superior Ct. 561, 564, 186 A.2d 864, 866 (1962), *cert. denied*, 374 U.S. 854 (1963).

Appellant also contends that the question should have been allowed to impeach the general credibility of the prosecutrix. A witness's prior sexual experience or lack of it, however, is not relevant to credibility, and may therefore not be inquired into to impeach credibility. This has long been the law of Pennsylvania.[2] As early as 1835 Chief Justice GIBSON so held in harsh but eloquent language: "Granting that universal immorality includes want of veracity, yet a man may be generally vicious without being universally so. He may be intemperate, incontinent, profane and addicted to many other vices that ruin the reputation, and yet retain a scrupulous regard for truth. Countless instances of such partial exemption from depravity are in the knowledge of every one. It is after all, character for veracity alone with which the jury have to do; and why not let it come to them in the first instance without admixture of ingredients that may alter its quality and corrupt its influence? If character for veracity be the legitimate point of inquiry, and if to this complexion it must come at last, it follows that it is the only one, and that an inquiry into anything else is illegitimate ...." *Gilchrist v. McKee*, 4 Watts 380, 381 (Pa. 1835).[3]

---

2. *Commonwealth v. Williams*, 209 Pa. 529, 58 A. 922 (1904); *Commonwealth v. Bubnis*, 197 Pa. 542, 47 A. 748 (1901).

3. The Virginia Supreme Court has recently held that evidence that the prosecutrix had engaged in prior consensual sexual relations

Appellant has cited *Commonwealth v. Eberhardt*, 164 Pa. Superior Ct. 591, 67 A.2d 613 (1949), as "authority ... for the singular purpose of establishing that in Pennsylvania a prosecutrix in a rape case may be asked if she had intercourse on prior occasions." Appellant's brief at 3. This is, however, an inaccurate statement of that case.

First, *Eberhardt* is limited to cases where consent of the victim is offered as a defense: "At common law, and under the statute [citation omitted] evidence of bad reputation for chastity is admissible on a rape charge as substantial evidence bearing on the question of the female's consent .... In the present case the complainant had testified to intercourse by force and without her consent, and to the extent that evidence of her bad reputation for chastity tended to show consent on her part it necessarily had a direct bearing on her credibility. *It is not necessary for us to go so far as to hold that bad reputation for chastity would affect her credibility generally and as to all elements of the crime charged.*" *Id.* at 603-604, 67 A.2d at 619. (Emphasis supplied.) Here, not only was consent not offered as a defense, but appellant himself testified that the prosecutrix did not consent.

Second, even where consent is at issue, it is settled that the credibility of a prosecutrix's testimony that she did not consent may not be tested by cross-examining her about her prior chastity or whether she had engaged in specific acts of intercourse; the examiner is limited to proof of her prior reputation for chastity.[4] This is shown

---

with men other than the defendant was inadmissible in a rape case. One reason the court gave for not admitting the evidence was that the evidence and the rebuttal evidence that would follow would inject collateral issues into the case that would divert the jury's attention from the real issue of the guilt or innocence of the accused. *Commonwealth v. Wynne*, 216 Va. 355, 218 S.E.2d 445 (1975).

4. *Accord, Commonwealth v. Wynne*, footnote 3, *supra.* There is a growing body of opinion that evidence of reputation for chastity should no longer be admissible, even in cases where consent is at issue.

by the decision in *Commonwealth v. Wink*, 170 Pa. Superior Ct. 96, 84 A.2d 398 (1951). There, the charge was statutory rape. The statute in effect, the Act of June 24, 1939, *supra*, 18 P.S. §4721, provided that "if the jury shall find that such woman child was not of good repute, and that the carnal knowledge was with her consent, the defendant shall be acquitted of rape, and be convicted of fornication." The prosecutrix testified that she had not consented to the intercourse but had submitted only because the defendant had threatened her with a revolver. On cross-examination designed to show, *inter alia*, that the prosecutrix was "a trollop" and "a prevaricator," *id.* at 100, 84 A.2d at 400, the defendant's counsel "got her to admit that she had had intercourse before her relations with [the defendant]." *Id.* at 101, 84 A.2d at 401. On appeal this court stated that "[t]he cross-examination was not admissible, for it is the repute of the girl which constitutes a defense to the felony, and not her acts: *Commonwealth v. Stewart*, 110 Pa. Superior Ct. 279, 168 A. 528 [1933]." Later in the opinion it is remarked that "when defendant's counsel cross-examined [the prosecutrix] as to her prior unchastity, the court did not of its own motion exclude the testimony, although he very well might have done so." *Id.* at 108-109, 84 A.2d at 404. *See*, to the same effect, *Commonwealth v. Pilosky*,

---

Reflective of this opinion is House Bill 580, currently before the General Assembly of Pennsylvania. This bill would amend §3104 of the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, §1, eff. June 6, 1973, 18 Pa.C.S. §3104, to read in pertinent part: "Except as provided in subsection (c), evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the victim's past sexual conduct with the defendant where consent of the victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence." H.B. 580, Gen. Assembly of Pa., 1975 Sess., as amended Nov. 25, 1975. We need express no opinion on this issue, for it is not raised in this case.

239 Pa. Superior Ct. 233 (1976); *Commonwealth v. Collin*, 233 Pa. Superior Ct. 300, 335 A.2d 383 (1975); and *Commonwealth v. Sutton*, 171 Pa. Superior Ct. 105, 90 A.2d 264 (1952). *Cf., Commonwealth v. Stewart, supra* (cross-examination on intercourse with two other men permitted but only as relevant to the paternity of the child).

Therefore, asking a prosecutrix on cross-examination if she was a virgin before the rape is prohibited, and the ruling of the lower court in the present case, sustaining the Commonwealth's objection to the examination, was proper.

It must nevertheless be acknowledged that appellant's reliance on *Eberhardt* is not entirely misplaced. Although the language of the opinion is consistent with the settled law, the court in fact upheld the following improper jury instruction:

> "The girl admitted that she was not a virgin on the night [of the alleged rape]. The Jury should be instructed that this fact, together with evidence of bad repute for morality and chastity, could be a basis for a finding by the Jury that the carnal knowledge by them was with her consent." *Id.* at 603, 67 A.2d at 619.

To the extent that *Eberhardt* would permit a prosecutrix to be cross-examined as to her virginity or the details of her prior sexual experience contrary to the settled law, it is overruled.[5]

## II

Appellant's second contention is that the verdict is contrary to the weight of the evidence. In reviewing the record to determine whether the verdict was justified,

---

5. To the extent that *Commonwealth v. Dulacy*, 204 Pa. Superior Ct. 475, 205 A.2d 706 (1964), *cert. denied*, 380 U.S. 925 (1965), would permit such questions, it is also overruled.

the Commonwealth, as verdict winner, is entitled to have its evidence and all reasonable inferences derived therefrom accepted as true, and all disputed facts resolved in its favor. *Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974). A review of the record here reveals that the verdict was indeed justified.

Prosecutrix testified that appellant had sexual intercourse with her by force and without her consent, that she screamed, hit him, and cried for help, that appellant fled upon learning of the arrival of the police, and that she immediately reported the rape to the police and her mother. Her testimony was corroborated on every point, except that of penetration, by other witnesses, including appellant's companions[6] and appellant himself.

With regard to the element of penetration, it is a long standing rule that the testimony of one witness - the injured person - can be sufficient to sustain a conviction of rape. *Johnson Appeal*, 445 Pa. 270, 284 A.2d 780 (1971); *Commonwealth v. Richardson*, 232 Pa. Superior Ct. 123, 334 A.2d 700 (1975); *Commonwealth v. Ebert*, 146 Pa. Superior Ct. 362, 22 A.2d 610 (1941). The prosecutrix testified that appellant penetrated her. That is enough. Her testimony is given further credibility, however, because it is totally consistent with the findings of the doctor who examined her that evening. Although he found no evidence of sperm cells,[7] he did find physical

---

6. Appellant contends that the testimony of Phillip Stoner was untrustworthy because he pleaded guilty to a lesser charge and testified for the Commonwealth. The lower court found Stoner to be a credible witness, however, and we will not disturb that finding on appeal. *Commonwealth v. Pugh*, 226 Pa. Superior Ct. 50, 311 A.2d 709 (1973). Furthermore, his testimony was not necessary to the Commonwealth's case. *Commonwealth v. Richardson*, 232 Pa. Superior Ct. 123, 334 A.2d 700 (1975).

7. Ejaculation is not an essential element of the crime of rape; penetration, however slight, is sufficient to show the element of carnal knowledge. *Commonwealth v. Green*, 210 Pa. Superior Ct. 482, 233 A.2d 921 (1967).

signs consistent with rape. He testified that prosecutrix must have had "some type of genital contact," and that the "vulva was somewhat enflamed," and there was "a small abrasive area around the clitoris."

The guilty verdict was amply supported by the evidence.

Affirmed.

JACOBS, J., concurs in the result.