Commonwealth *v.* Dulacy et al., Appellants.

476

Argued November 9, 1964. Before Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ. (Rhodes, P. J., absent).

*James A. Danahey,* with him *J. I. Simon,* for appellants.

*Louis Abromson,* Assistant District Attorney, with him *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

Opinion by Wright, J., December 16, 1964:

At No. 49 June Term 1963, in the Court of Oyer and Terminer of Allegheny County, the grand jury returned as a true bill an indictment against Stephen Dulacy, William Kohan and Thomas Kohan endorsed as follows: "Rape (Under Age of Sixteen Years)". The

language of the bill is set forth in the footnote.[1] The defendants entered pleas of not guilty. The case was tried before Honorable JAMES A. REILLY, specially presiding, and a jury. After a verdict of guilty, counsel for the defendants filed a motion for a new trial. This motion was refused by the court en banc, and sentences were imposed. These appeals followed.

The principal contention advanced by appellants is that the trial judge charged the jury improperly concerning the effect of testimony that the complainant woman-child was not of good repute. Since we have concluded that there was error in this connection of such serious import as to require the grant of a new trial, we deem it unnecessary to discuss the other two questions which appellants raise.

In the words of the trial judge, "this case must stand or fall on the testimony of Diane Roeder". Briefly summarized, Diane's testimony was that she was born on July 30, 1948. She resided with her mother on Cedar Ridge Road in Allison Park. On May 6, 1963, Diane's mother had an evening appointment at

---

[1] "The Grand Inquest of the Commonwealth of Pennsylvania, now inquiring in and for the body of the County of Allegheny, upon their oaths and solemn affirmations, respectively, Do Present, That Stephen Dulacy, William Kohan and Thomas Kohan late of said County, yeoman, being of the age of sixteen years and upwards, on the sixth day of May in the year of our Lord one thousand nine hundred and sixty three at the County aforesaid, and within the jurisdiction of this Court, with Force and Arms, in and upon the body of one Diane Roeder feloniously did make an assault, she the said Diane Roeder then and there being a woman-child under the age of sixteen years, to wit: of the age of fourteen years and upwards; and that the said Stephen Dulacy, William Kohan and Thomas Kohan, her the said Diane Roeder so being such woman-child as aforesaid, then and there feloniously did unlawfully and carnally know and abuse, contrary to the form of the Act of the General Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania."

the office of her physician. She left Diane at a dairy store frequented by young people of the neighborhood. When her mother did not return promptly, Diane started to walk home, a distance of approximately three miles. The exact hour does not appear, but it was not yet dark. When she was less than a quarter of a mile from her home, the three appellants came along in an automobile. Stephen Dulacy and Thomas Kohan were each nineteen years of age, and William Kohan was aged eighteen years. These three young men also lived in the vicinity of Allison Park, and Diane was acquainted with them. They had visited in her home, and a sister of the Kohans was one of her girl friends. Diane entered the car voluntarily. It went by the road to her home, and proceeded on to a tavern several miles distant. One of the appellants went into the tavern and returned with several quarts of beer. Diane made no attempt to leave the car at that time. Instead of taking her home as she requested, appellants drove into an old dirt road and all three violated her forcibly. She resisted, but made no outcry. They then "dropped me off by a dirt road up by my house". When she entered the house her mother "just looked at me and started hollering". Diane refused to talk with her mother, but finally did relate the incident to her aunt who took her to the police station. A vaginal examination at McGee Hospital revealed the presence of sperm. Diane admitted that she had been intimate with other boys on prior occasions, "but not with those three".

Appellant Thomas Kohan testified that he had been at Smith's Sunoco station all that evening. In this regard he was corroborated by an officer of the Hampton Township Police, and by other witnesses. Appellants Stephen Dulacy and William Kohan testified that they had been at the same gas station early in the evening, that they left to watch a ball game being played at a neighborhood field by the St. Ursula Colts, and

that they returned to the gas station at the conclusion of the game. Each appellant testified that he had no automobile, and flatly denied any participation in the incident which Diane related. A number of witnesses testified that Diane's reputation for chastity was not good.

During the course of his charge, the trial judge instructed the jurors that they must find that the defendants were over the age of sixteen years and that Diane was under that age. Pointing out that Diane's testimony was the crux of the case, he made the following statement, to which a specific exception was taken: "There has been considerable testimony as to the bad repute or reputation of the girl, and that the girl had in the community in which she lived for being an unchaste girl. This testimony in this case is of no value and should be disregarded by you because the law will not condone or forgive a forceable rape of even an unchaste or disreputable woman. If it is contended by the defense that the girl consented to the intercourse, her bad repute may be shown so as to reduce the crime to fornication. But, in this case, the defendants deny the crime. So, consent is not an issue and neither would evidence of bad reputation for that same reason".

A distinguished text writer has said that nonconsent of the complainant in a rape case is a material element of the offense, "and the character of the woman as to chastity is of considerable probative value in judging the likelihood of that consent": Wigmore on Evidence, 3d Ed., Vol. I, Section 62. Unchastity of the complainant may be proved by showing her bad reputation: 75 C.J.S. Rape Section 63. "At common law, and under the statute, evidence of bad reputation for chastity is admissible on a rape charge as substantive evidence bearing on the question of the female's consent": *Commonwealth v. Eberhardt,* 164 Pa. Supe-

rior Ct. 591, 67 A. 2d 613. Section 721 of The Penal Code[2] contains the following provision: "Upon the trial of any defendant charged with the unlawful carnal knowledge and abuse of a woman child under the age of sixteen (16) years, if the jury shall find that such woman child was not of good repute, and that the carnal knowledge was with her consent, the defendant shall be acquitted of rape, and be convicted of fornication".

The theory of the trial judge, as stated in his opinion for the court en banc, was "that in the circumstances of this case—a charged felonious forcible rape, without the consent of the victim—her bad repute was immaterial and irrelevant under a blanket denial by the defendants of any association whatever with the girl on the night in question". The difficulty with this theory, so far as the instant case is concerned, is that the indictment charged statutory rape, and the testimony might have induced the jury to conclude that the carnal knowledge of which Diane complained was with her consent. The evidence of her bad reputation for chastity was properly admitted, and should not have been withdrawn from the jury's consideration. Even though the defenses of consent and alibi were inconsistent, appellants could assert them both: *Commonwealth v. Perry,* 199 Pa. Superior Ct. 379, 185 A. 2d 809.

Judgments reversed with a venire.

---

[2] Act of June 24, 1939, P. L. 872, Section 721, 18 P.S. 4721.